******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ANDRES SOSA *v.* DAVE ROBINSON ET AL.
(AC 41832)

Prescott, Bright and Moll, Js.*

*Syllabus*

The plaintiff inmate appealed to this court from the summary judgment rendered by the trial court in favor of the defendant D, a commissary operator at the correctional facility in which the plaintiff was incarcerated. The plaintiff brought an action against D in his individual and official capacities, claiming under federal law (42 U.S.C. § 1983) that D violated his rights under the first amendment by denying his application to work in the prison commissary in retaliation for claims the plaintiff previously had filed against other Department of Correction employees. The plaintiff further alleged that D discriminated against him on the basis of race in employment assignments and violated the takings clause of the fifth amendment by misappropriating from inmate trust accounts the interest earned on inmates' Social Security benefits. The plaintiff had been employed in the prison commissary in 2006 until he was given a disciplinary citation and his employment was terminated, which he did not dispute. More than seven years later, he applied for an assignment in the commissary, but was denied by D because of the prior termination. At the time the plaintiff's application was denied, the prison had a written policy that provided that, for an inmate to be eligible to work in the commissary, he must have not been previously terminated from a commissary position. The trial court dismissed the first two counts of the plaintiff's complaint, in which he sought money damages and injunctive and declaratory relief against D in his individual capacity. The court concluded that it lacked subject matter jurisdiction because sovereign immunity barred those claims. The court rendered summary judgment on the plaintiff's remaining claims because he failed to exhaust his administrative remedies under the Prison Litigation Reform Act (42 U.S.C. § 1997e (a)) or to seek permission from the Claims Commissioner, pursuant to statute (§§ 4-141 through 4-165) to sue the state. On appeal, the plaintiff claimed, inter alia, that the trial court erred in concluding that it did not have subject matter jurisdiction over his claims for compensatory relief against D in his individual capacity and in concluding that D was entitled to summary judgment because the plaintiff failed to exhaust his administrative remedies. *Held*:

1. The trial court erred when it dismissed for lack of subject matter jurisdiction the first two counts of the plaintiff's complaint, as sovereign immunity did not bar his claims for compensatory relief against D in his individual capacity: the trial court's application of the test established in *Somers* v. *Hill* (143 Conn. 476) to determine if the plaintiff's claim under § 1983 was against the state and, thus, barred by the eleventh amendment was incorrect, as the Supreme Court's decision in *Sullins* v. *Rodriguez* (281 Conn. 128) made clear that § 1983 claims must be analyzed pursuant to federal law and that the eleventh amendment analysis of *Somers* is wholly inapplicable, and, although the plaintiff named D in his official and individual capacities as the party against whom he sought relief, this court viewed the claim for damages as against D solely in his individual capacity, and, thus, the plaintiff's articulation of D's capacity in the complaint was sufficient to commence a § 1983 claim against a state officer in his individual capacity.

2. D was entitled to summary judgment on the first count of the plaintiff's complaint, which alleged retaliation, and the second count of the complaint, which alleged discrimination, failed as a matter of law:

    a. The plaintiff failed to submit any evidence to create a genuine issue of material fact that there was a causal connection between his protected first amendment activity and the adverse employment action, as he produced no evidence disputing his termination from the commissary in 2006 or the existence and applicability of the prison's hiring policy, and he produced no evidence that D had any role in the adoption of the policy or that it was not applied in a consistent fashion to all inmates.

    b. The plaintiff failed to demonstrate the existence of a genuine issue

of material fact as to D's discriminatory intent, as the plaintiff's prior termination from his job as a commissary line worker constituted a legitimate, nondiscriminatory reason for the denial of his application for employment in the commissary; although the plaintiff proffered evidence that tended to show that he was a member of a protected class who was qualified for the position and had suffered an adverse employment action, he failed to offer any evidence, direct or circumstantial, that established an inference of discrimination underlying D's rejection of his application, and this court could not infer from his allegations of discrimination alone that D acted with discriminatory intent.

3. The plaintiff's takings claim failed as a matter of law, as he neither alleged nor submitted any evidence regarding an appropriation of his property or any evidence of an unconstitutional taking by D, his right to recover having been limited to the allegations set forth in his complaint, which alleged that inmates without Social Security numbers are denied employment in the commissary.

Argued February 19—officially released September 22, 2020

*Procedural History*

Action to recover damages for the defendants' alleged violations of the plaintiff's constitutional rights, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the action was withdrawn as against the defendant Steven Plourde; thereafter, the court, *Swienton, J.*, dismissed certain counts of the complaint; subsequently, the court granted the named defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Improper form of judgment*; *affirmed in part*; *judgment directed in part*.

*Andres R. Sosa*, self-represented, the appellant (plaintiff).

*Janelle R. Medeiros*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (named defendant).

*Opinion*

BRIGHT, J. The plaintiff, Andres Sosa, appeals from the judgment of the trial court, dismissing certain counts of his complaint in which he sought compensatory relief from the defendant, Dave Robinson,[1] a correctional commissary lead operator at the MacDougall-Walker Correctional Institution (MacDougall), in his individual capacity and rendering summary judgment on the remainder of the complaint in favor of the defendant. The plaintiff claims that the court erred in concluding that it did not have subject matter jurisdiction over his claims seeking compensatory relief against the defendant in his individual capacity and erred in concluding that the defendant was entitled to summary judgment on the remainder of the plaintiff's complaint due to the plaintiff's failure to exhaust his administrative remedies. In addition to arguing that the court's subject matter jurisdiction analysis was correct, the defendant argues in the alternative that the court correctly rendered summary judgment in his favor because the plaintiff's claims fail as a matter of law. We agree with the plaintiff that the court had jurisdiction over the claims in which he seeks compensatory relief against the defendant in his individual capacity. We agree, however, with the defendant's alternative argument that the plaintiff's claims fail on their merits as a matter of law. Therefore, we reverse in part and affirm in part the judgment of the trial court.[2]

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are relevant to our analysis of the plaintiff's claims.

At all times relevant to this appeal, the plaintiff was an inmate at MacDougall. While incarcerated, the plaintiff filed a number of inmate complaints alleging that several Department of Correction (department) employees were engaging in discriminatory practices and favoritism. The first complaint of record was in response to the plaintiff's removal from the M housing unit (M-unit)[3] on August 24, 2004, for "unknown reasons." On September 1, 2004, the plaintiff wrote to the M-unit major, claiming that he was discriminated against because no misconduct report was filed prior to his removal. The plaintiff further suggested that Warden John Sieminski was retaliating against him for his pending lawsuit against Warden Giovanny Gomez.

On September 22, 2004, the plaintiff filed an inmate request form, alleging that he was discriminated against by the defendant on September 17, 2004. Specifically, the plaintiff stated that when he showed up to begin working in the commissary, the defendant turned him away twice for not having completed a commissary work application, a document the plaintiff alleged he, in fact, did complete. On October 15, 2004, Andrea S. Baker, the classification committee chairperson, issued

a response to the plaintiff's request in which she concluded that there was no discrimination in the plaintiff's assignment. Baker further stated that the plaintiff was "on the institutional laundry waiting list as a primary, as well as, the commissary waiting list as a secondary" and that job placement was moving slowly "due to the volume of inmates on the job waiting lists."

On January 3, 2005, the plaintiff began working in the commissary until he subsequently was transferred to the restrictive housing unit on June 27, 2005, for allegedly "interfering with . . . safety and security." The plaintiff later was acquitted of the disciplinary citation on July 12, 2005. Soon thereafter, the plaintiff spoke with Sieminski about having his job restored because the disciplinary citation was dismissed and he was released from restrictive housing. Sieminski advised the plaintiff to write to his unit major to resolve the matter. After again alleging that he was being discriminated against, the plaintiff, with the help of the Inmates' Legal Assistance Program, was reinstated to his commissary job on September 9, 2005.

While working in the commissary, the plaintiff received, for the most part, positive feedback from his supervisors for his job performance. On May 8, 2006, however, Alicia Demars, a commissary supervisor, issued the plaintiff a class B disciplinary citation, allegedly because he "became belligerent" and started "causing a disruption" when she gave him a direct order. As a result, the plaintiff's employment in the commissary was terminated. There is no evidence that the plaintiff disputed the disciplinary citation or his termination of employment from the commissary.

On September 10, 2013, the plaintiff filed another inmate request form, this time with Warden Peter Murphy, requesting assistance with the commissary application process. In response, on September 23, 2013, a paralegal with the department's legal affairs unit informed the plaintiff that Lou Failla, the commissary lead supervisor, would consider the plaintiff's application for an assignment in the commissary, provided that the plaintiff met all of the qualifications for such a position. On February 7, 2014, the plaintiff was informed that the defendant had denied his application due to the plaintiff's May, 2006 disciplinary report and termination. At the time that the plaintiff's application was denied, MacDougall had a written policy that provided that, for an inmate to be eligible to work in the commissary, he must "[h]ave not been previously terminated from a commissary position."

On February 8, 2014, the plaintiff filed a grievance against the defendant and Steven Plourde, the department's fiscal administrative supervisor for commissary administration, alleging that they denied his commissary job application despite his meeting all of the requisite criteria. The plaintiff further alleged that the defen-

dant and Plourde engaged in the inconsistent enforcement of facility rules, favoritism, and retaliation.

On February 18, 2015, the plaintiff commenced this action for compensatory, declaratory, and injunctive relief against the defendant in his individual and official capacities, raising federal claims pursuant to 42 U.S.C. § 1983 and a takings claim.[4] In the first count of his three count complaint, the plaintiff alleged that the defendant violated his rights under the first amendment to the United States constitution by denying his commissary job application in retaliation for claims he previously had filed against other department employees.[5] In particular, the plaintiff claimed that his filing of claims against other department employees was protected speech, and that, by denying his commissary job application, the defendant took adverse action against him in violation of his first amendment right to petition the government for redress of grievances.

In the second count, the plaintiff alleged that the defendant violated the equal protection clause of the fourteenth amendment to the United States constitution by discriminating against him in his employment assignments. Specifically, the plaintiff stated: "The [defendant] is clearly violating the equal protection of law by deliberately and purposely discriminating [against] the plaintiff, a minority race (Hispanic), a [n]ative [c]itizen of the Dominican Republic in the [c]lassification of [a] [j]ob [a]ssignment [in the commissary] . . . ."

Finally, in his third count, the plaintiff set forth a claim that made reference to the defendant's allegedly misappropriating from inmate trust accounts interest earned by inmates on their Social Security benefits. The plaintiff alleged that the defendant had a practice of not employing illegal immigrants and citizens without Social Security numbers because he could take interest earned on Social Security benefits only from the inmate accounts of individuals with a Social Security number. The plaintiff further alleged that a property interest exists in whatever interest has accrued on moneys in an inmate trust account, and the defendant's appropriation of that interest constitutes an unconstitutional taking in violation of the takings clause of the fifth amendment to the United States constitution.

As to the first and second counts of his complaint, the plaintiff sought actual damages, punitive damages, declaratory relief, and injunctive relief against the defendant in both his individual and official capacities. As to the third count of his complaint, although the plaintiff did not allege that there had been any taking of any money from his inmate trust account, the plaintiff sought the return of all "tax return" interest collected by the defendant.

In his answer, filed on June 26, 2015, the defendant denied the plaintiff's allegations and raised five special

defenses. The defendant asserted that (1) the court lacked jurisdiction over all three counts because the defendant is immune from suit pursuant to General Statutes § 4-165, (2) the plaintiff failed to state a claim for which relief may be granted, (3) in the absence of an allegation of permission to sue the state, pursuant to General Statutes § 4-160 (b), the plaintiff failed to state a claim on which relief may be granted, (4) to the extent that the plaintiff sought equitable relief and recovery of money damages from the defendant, the court lacks subject matter jurisdiction over the dispute on the basis of sovereign immunity, and (5) the plaintiff has failed to exhaust his administrative remedies.

On November 19, 2015, the defendant filed a motion for summary judgment, asserting that the decision to reject the plaintiff's commissary application was based on nondiscriminatory reasons, namely, because the plaintiff previously had been terminated from a commissary position. The plaintiff filed an objection to the defendant's motion on January 18, 2016, arguing that (1) the adverse action taken by the defendant would not have occurred but for the plaintiff's filing of claims against other department officials, (2) a genuine issue of material fact existed as to whether the plaintiff was intentionally treated differently from other similarly situated inmates in his housing unit and whether there was a rational basis for the difference in treatment, and (3) the defendant's unconstitutional taking did not arise out of the denial of the plaintiff's commissary job application but, rather, arose out of the defendant's withholding of interest on moneys in the plaintiff's inmate trust account.

On February 16, 2018, the defendant filed a supplemental memorandum of law in support of his motion for summary judgment, arguing that (1) sovereign immunity barred the plaintiff's claims for money damages against the defendant in his official capacity, (2) sovereign immunity barred the plaintiff's claims for money damages against the defendant in his individual capacity, (3) all of the plaintiff's claims for official capacity relief were barred by sovereign immunity under the eleventh amendment to the United States constitution, (4) the plaintiff's takings, equal protection, and retaliation claims failed as a matter of law, (5) the plaintiff failed to exhaust the administrative remedies available to him prior to bringing the underlying action, as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e (a), and (6) the plaintiff could not prove the existence of any genuine issue of material fact regarding the grounds for his denial of employment in the commissary.

On March 21, 2018, the plaintiff filed a memorandum of law in opposition to the defendant's supplemental memorandum of law in support of the motion for summary judgment, arguing that (1) the plaintiff's claims

for money damages against the defendant were not barred by sovereign immunity, (2) the plaintiff's property interest was protected by the takings clause, and "appropriation of that interest by prison officials may be a taking for public [use] that requires just compensation," (3) the plaintiff suffered an adverse action in connection with his employment in the commissary, and the adverse action occurred under conditions giving rise to an inference of discrimination, (4) the defendant disproportionately applied a custom hiring policy against the plaintiff and could not provide a legitimate, nondiscriminatory reason for the denial of his commissary job application, (5) the evidence proved that the defendant retaliated against the plaintiff because the plaintiff was qualified to work in the commissary and the defendant's custom hiring policy, which was not in effect during the plaintiff's employment in the commissary, cannot be applied retroactively, and (6) the plaintiff proffered sufficient evidence that showed the existence of a genuine issue of material fact.

On May 30, 2018, the court (1) dismissed the plaintiff's claims for money damages against the defendant in his individual capacity because it concluded that those claims were barred by sovereign immunity,[6] (2) dismissed the plaintiff's claims seeking injunctive and declaratory relief against the defendant in his individual capacity because the court lacked subject matter jurisdiction over those claims, as they were similarly barred by sovereign immunity, and (3) rendered summary judgment in favor of the defendant as to the plaintiff's remaining claims because the plaintiff had failed to exhaust his administrative remedies before pursuing those claims. The court reasoned that, to the extent that the plaintiff brought claims for money damages against the defendant in his official capacity, those claims would constitute an action against the state, which would be barred by sovereign immunity. The court also concluded that the plaintiff's claim for damages against the defendant in his individual capacity was barred by sovereign immunity because, inter alia, the state is the real party against whom relief is sought. Similarly, to the extent that the plaintiff brought claims for declaratory and injunctive relief against the defendant in his individual capacity, the court determined that, notwithstanding those claims falling under the second and third exceptions to sovereign immunity under state law,[7] the plaintiff's claims would subject the state to liability as the real party against whom relief would be sought, which, according to the court, barred those claims on sovereign immunity grounds. As to exhaustion, the court concluded that the plaintiff had failed to comply with the exhaustion requirements of 42 U.S.C. § 1997e et seq., and had failed to seek the permission of the Claims Commissioner, pursuant to General Statutes §§ 4-141 through 4-165, before seeking money damages against the state. This appeal followed. Additional facts

will be set forth as necessary.

I

On appeal, the plaintiff first claims that the trial court erred in concluding that, because he was seeking money damages from the defendant, sovereign immunity barred his retaliation and discrimination claims brought against the defendant in his individual capacity. The defendant responds that the court properly dismissed the claims seeking money damages against him in his individual capacity. In the alternative, the defendant argues that, even if the court erred, the claims, nonetheless, fail on their merits as a matter of law. We agree that the claims are not barred by sovereign immunity but conclude that they fail as a matter of law.

At the outset, we note that sovereign immunity implicates the court's subject matter jurisdiction, which raises a question of law subject to plenary review. See, e.g., *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 114, 891 A.2d 106 (2006). We also note that a challenge to the court's subject matter jurisdiction is ordinarily raised by way of a motion to dismiss. Id., 116 ("[i]n general, a motion to dismiss is the appropriate procedural vehicle to raise a claim that sovereign immunity . . . bars the action" (internal quotation marks omitted)). Our Supreme Court, however, has held that a motion for summary judgment is also an appropriate means of challenging the court's subject matter jurisdiction, as the question of subject matter jurisdiction can be raised at any time. See, e.g., id., 119. Furthermore, once the question of the court's subject matter jurisdiction is raised, it must be resolved before the court addresses the merits of the plaintiff's claims. See id., 116.

The trial court determined that it did not have subject matter jurisdiction over any count that alleged that the defendant was liable in his individual capacity because such liability was barred by sovereign immunity. Consequently, the court dismissed those claims. Therefore, we first must address the jurisdictional question of whether the court properly applied sovereign immunity to each of the plaintiff's individual capacity claims.

In his complaint, the plaintiff alleged that the defendant (1) violated his first amendment right to petition the government for redress of grievances by denying his commissary job application in retaliation for the claims he previously had brought against other department officials and (2) violated his fourteenth amendment right to equal protection of the law by discriminating against him on the basis of race in job placements. The plaintiff maintained that the defendant's alleged constitutional violations of his rights entitled him to both compensatory relief and punitive damages. In response, the defendant argued that the eleventh amendment to the United States constitution barred the plaintiff's claims for money damages because the

defendant at all times was acting in his official capacity. The trial court agreed, concluding that it lacked subject matter jurisdiction over the plaintiff's individual capacity claims. For the reasons that follow, we conclude that the court applied the incorrect legal test to the plaintiff's § 1983 claims. Applying the correct test, we conclude that sovereign immunity does not bar the plaintiff's claims for compensatory relief against the defendant in his individual capacity.

The following legal principles are relevant to our resolution of the plaintiff's claim for money damages against the defendant in his individual capacity. "Section 1983 of title 42 of the United States Code provides in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any [s]tate or [t]erritory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [c]onstitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . . A state as an entity having immunity under the eleventh amendment to the United States constitution, is not a person within the meaning of § 1983 and thus is not subject to suit under § 1983 in either federal court or state court. . . . *This rule also extends to state officers sued in their official capacities.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 310–11, 828 A.2d 549 (2003).

"[S]tate officials sued for money damages in their official capacities are not 'persons' within the meaning of § 1983 because the action against them is one against the office and, thus, no different from an action against the state itself. . . . State officials are, however, 'persons' within the meaning of § 1983 and may be held personally liable when sued as individuals for actions taken in their official capacities and, thus, under color of law." (Citation omitted.) *Sullins* v. *Rodriguez*, 281 Conn. 128, 141, 913 A.2d 415 (2007).

"The United States Supreme Court has asserted that [f]ederal law is enforceable in state courts . . . because the [c]onstitution and laws passed pursuant to it are as much laws in the [s]tates as laws passed by the state legislature. . . . State courts have concurrent jurisdiction over claims brought under § 1983. . . . Nevertheless, [c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced. . . . *The elements of, and the defenses to, a federal cause of action*

*are defined by federal law.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 133–34.

In *Sullins*, the court was faced with the question of whether the trial court erred in denying the defendant's motion to dismiss the plaintiff's complaint for lack of subject matter jurisdiction on sovereign immunity grounds in circumstances similar to those present in this case. Id., 129–30. The plaintiff, a former inmate of Northern Correctional Institution (Northern), sought compensatory relief against the defendant in his individual capacity pursuant to § 1983, arising out of the defendant's alleged violation of the plaintiff's eighth and fourteenth amendment rights under the United States constitution. Id., 130–32. The defendant, a former warden of Northern, argued that the trial court improperly "applied federal, not state, sovereign immunity law" and improperly "rejected [his] position that the state is the real party in interest, despite the plaintiff's allegations naming the defendant in his individual capacity." Id., 130. As does the defendant in this case, in *Sullins*, the defendant argued that the four part test articulated in *Spring* v. *Constantino*, 168 Conn. 563, 362 A.2d 871 (1975), and *Somers* v. *Hill*, 143 Conn. 476, 123 A.2d 468 (1956), applied to determine whether the plaintiff's claim was a claim against the state that was barred by the eleventh amendment. *Sullins* v. *Rodriguez*, supra, 281 Conn. 131.[8]

The court explicitly rejected the defendant's reliance on these cases and the eleventh amendment. Id., 133 n.8. Instead, the court concluded that, "when sovereign immunity is claimed as a defense to a cause of action pursuant to § 1983, federal sovereign immunity jurisprudence preempts analysis under state law." Id., 133. In reaching its conclusion, the court cited to a number of cases that stand for the proposition that federal precedent defines the contours of immunity available to government officials in the context of an action under § 1983. Id., 134–36. Notably, the court cited to its decision in *Miller*, in which it considered whether both the plaintiff's state law and federal § 1983 claims were barred by the defendants' sovereign immunity defense. Id., 135. The court noted that, in *Miller*, it addressed separately the plaintiff's § 1983 claim and concluded that, pursuant to *federal precedent*, the plaintiff's claim was an action against the state, which was barred by sovereign immunity. Id., 135 n.9. The court explained: "Thus, we conclude that, although the test set forth in *Spring* and *Miller* is an appropriate mechanism for our state courts to determine the capacity in which the named defendants are sued in actions asserting violations of state law, to employ that test to divest state courts of jurisdiction to hear otherwise cognizable § 1983 claims would be to erect a constitutionally impermissible barrier to the vindication of federal rights. . . . We find no merit in the defendant's contention that the

result of our conclusion is to preclude the defense of sovereign immunity in every action under § 1983. Sovereign immunity may bar a plaintiff's claim pursuant to § 1983, but the trial court concluded, and we agree, that federal law must govern that inquiry." (Citation omitted.) Id., 136.

The court then considered the defendant's argument that, in *Alden* v. *Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), the United States Supreme Court determined that the eleventh amendment barred federal claims brought against a state both in federal and state courts. *Sullins* v. *Rodriguez*, supra, 281 Conn. 136–38. In *Alden*, the Supreme Court stated that "the sovereign immunity of the [s]tates neither derives from, nor is limited by, the terms of the [e]leventh [a]mendment." *Alden* v. *Maine*, supra, 713. The court in *Alden* stated further that, "save where there has been a surrender of [sovereign] immunity [in the constitution]"; (internal quotation marks omitted) id., 730; "Congress lacks the [a]rticle I power to subject the [s]tates to private suits in [their own courts]." Id., 748.

The court in *Sullins* reasoned that *Alden* "introduced uniformity in the state and federal courts as to the availability of a sovereign immunity defense. In *Howlett* [v. *Rose*, 496 U.S. 356, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990)], the court held that a sovereign immunity defense that was *not available in federal court could not be employed in state court.* . . . In *Alden*, the court achieved uniformity in the other direction, by making available in a state forum a sovereign immunity defense that was already available in federal court." (Citation omitted; emphasis added.) *Sullins* v. *Rodriguez*, supra, 281 Conn. 138. Nevertheless, the court concluded that *Alden* was inapplicable to the plaintiff's § 1983 claim. "Congress, however, did not pass § 1983 pursuant to its article one power. It was, instead, 'one of the means whereby Congress exercised the power vested in it by § 5 of the [f]ourteenth [a]mendment to enforce the provisions of that [a]mendment.' *Monroe* v. *Pape*, 365 U.S. 167, 171, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961) [overruled in part on other grounds by *Monell* v. *Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)]. Section 5 empowers Congress to abrogate state sovereign immunity. According to the Supreme Court, '[w]hen Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional [a]mendment whose other sections by their own terms embody limitations on state authority. *We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the* [f]*ourteenth* [a]*mendment, provide for private suits against* [s]*tates or state officials which are constitutionally impermissible in other contexts.*' . . . *Fitzpatrick* v. *Bitzer*, [427 U.S. 445, 456, 96

S. Ct. 2666, 49 L. Ed. 2d 614 (1976)]." (Emphasis in original; footnote omitted.) *Sullins* v. *Rodriguez*, supra, 139–40.

Thus, our Supreme Court's thorough analysis in *Sullins* makes clear that the plaintiff's § 1983 claims must be analyzed pursuant to federal law and that the eleventh amendment analysis of *Spring* and *Somers* is wholly inapplicable. Nevertheless, in reaching its conclusion that sovereign immunity barred the plaintiff's individual capacity claims for compensatory relief, the trial court in the present case did not discuss *Sullins* or any of the legal principles discussed therein. Instead, the trial court incorrectly applied the four-pronged test established in *Somers*.[9] We now apply the correct test and analyze under federal law whether the plaintiff's claims for money damages against the defendant in his individual capacity are barred by sovereign immunity.

In the first and second counts of his complaint, the plaintiff explicitly named the defendant, in both his official and individual capacities, as the party against whom he sought relief. Nevertheless, in his memorandum of law in opposition to the defendant's motion for summary judgment, the plaintiff acknowledged that "sovereign immunity . . . protect[s] the government and the [s]tate . . . . [It does not] protect those [like] the defendant who commit unconstitutional practices by [breaking] the law." Thus, we view the plaintiff's claim for damages against the defendant as seeking damages against him solely in his individual capacity. See footnote 6 of this opinion. Although the United States Supreme Court has held that a sovereign immunity defense cannot be overcome merely by the "mechanics of captions and pleading"; *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); our Supreme Court has interpreted the holding in *Coeur d'Alene Tribe of Idaho* "to stand for the narrow proposition that, when a plaintiff seeks relief that *only* the state can provide, he or she may not overcome sovereign immunity simply by suing an individual actor." (Emphasis in original.) *Sullins* v. *Rodriguez*, supra, 281 Conn. 143. Because the money damages sought by the plaintiff are relief that the defendant, in fact, can provide, the plaintiff's articulation of the defendant's capacity in his complaint "is sufficient to commence a § 1983 claim against a state officer in his individual capacity." Id., 141.

Accordingly, we conclude that the trial court erred when it determined that the plaintiff's claims for compensatory relief against the defendant in his individual capacity are barred by sovereign immunity. Consequently, the court erred when it dismissed for lack of subject matter jurisdiction counts one and two against the defendant in his individual capacity.[10]

II

Having addressed the court's subject matter jurisdiction, we consider the defendant's alternative argument that the plaintiff's claims for retaliation and discrimination fail on their merits, as a matter of law.

We begin with our standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment [as to the merits of a claim] are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Escourse* v. *100 Taylor Avenue, LLC*, 150 Conn. App. 819, 823, 92 A.3d 1025 (2014).

"Where the trial court reaches a correct decision but on [alternative] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive alternat[ive] ground for which there is support in the trial court record." (Citation omitted; internal quotation marks omitted.) *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 599, 790 A.2d 1178 (2002).

The following additional facts and procedural history are relevant to our resolution of the plaintiff's retaliation and discrimination claims. In support of his argument that he did not deny the plaintiff's commissary application for retaliatory or discriminatory reasons, the defendant attached his sworn affidavit to his November 19, 2015 motion for summary judgment. In his affidavit, the defendant averred that he knew of the plaintiff's other lawsuits against department employees but that he did not know the names of those employees. The defendant further averred that he did not recall seeing the plaintiff's 2014 commissary application but that the plaintiff "would not have been hired because one of the requirements is that the inmate was not previously terminated from the [c]ommissary." Finally, the defendant averred that he was "not responsible for the policy concerning the eligibility of inmates for jobs in the [c]ommissary."

In addition to his affidavit, the defendant also attached a copy of the commissary inmate worker classification requirements (MacDougall hiring policy), revised on February 27, 2010, which stated in relevant part: "In order to be eligible to be classified to a position in the MacDougall/Walker commissary each inmate must meet the conditions stated below. Prior to being classified the inmate must . . . [h]ave not been previously terminated from a commissary position . . . [and] [n]o candidate will be placed in the commissary without meeting all of the conditions stated above."

In his January 18, 2016 memorandum of law in opposition to the defendant's motion for summary judgment, the plaintiff maintained that he was denied commissary employment for retaliatory reasons. Specifically, the plaintiff argued that "[t]here is no legitimate penological nondiscriminatory reason [for] the [defendant] not to afford the plaintiff with the same job/program equal opportunity other than retaliation and discrimination since the plaintiff was already not working in the prison commissary at the time the custom policy was [established]. . . . [It cannot] apply retroactive[ly] to the plaintiff at all, [e]specially when the same custom policy is not being use[d] with other inmates hired by the [defendant] who fall under the same criteria as the plaintiff." The plaintiff further argued that the defendant was "personally involved not only because of [his] linkage in the chain of command but also because [he] drafted the unconstitutional custom prison policy used in the employment decision . . . ." The plaintiff submitted no evidence in support of these arguments.

The defendant, in his February 16, 2018 supplemental memorandum of law in support of his motion for summary judgment, argued, among other things, that the plaintiff's claims fail as a matter of law. Specifically, the defendant argued that, with respect to the plaintiff's discrimination claim, any purported adverse action that he took against the plaintiff was for legitimate, nondiscriminatory reasons, namely, the plaintiff's failure to meet the requirements under the MacDougall hiring policy. As to the plaintiff's retaliation claim, the defendant argued further that the plaintiff failed to provide any evidence to suggest that his allegations against other department officials motivated the defendant's decision to deny the plaintiff employment in the commissary.

A

We now turn our attention to the plaintiff's retaliation claim. The following legal principles inform our conclusion that the defendant is entitled to judgment as a matter of law. "[The United States Court of Appeals for the Second Circuit] has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guar-

anteed by the [f]irst and [f]ourteenth [a]mendments and is actionable under § 1983. . . . [I]ntentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that . . . [§] 1983 [is] intended to remedy." (Citation omitted; internal quotation marks omitted.) *Graham* v. *Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

"To prevail on a [f]irst [a]mendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action. . . . An inmate bears the burden of showing that the protected conduct was a substantial or motivating factor in the prison officials' disciplinary decision. . . . The defendant official then bears the burden of establishing that the disciplinary action would have occurred even absent the retaliatory motivation, which he may satisfy by showing that the inmate committed the . . . prohibited conduct charged in the misbehavior report." (Citations omitted; internal quotation marks omitted.) *Holland* v. *Goord*, 758 F.3d 215, 225–26 (2d Cir. 2014).

"The Second Circuit has 'approach[ed] prisoner claims of retaliation with skepticism and particular care,' noting that such claims are 'easily fabricated' and that 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.' *Dawes* v. *Walker*, 239 F.3d 489, 491 (2d Cir. 2001). 'Because claims of retaliation are easily fabricated, the courts . . . require that they be supported by specific facts; conclusory statements are not sufficient.'" *Lockhart* v. *Semple*, Docket No. 3:18-cv-1497 (JCH), 2018 WL 5828298, *4 (D. Conn. November 7, 2018).

The complaint in the present case alleges that the defendant retaliated for the plaintiff's prior claims against other department officials. To that end, the plaintiff's speech was protected, and, therefore, his allegations satisfy the first element necessary to sustain a claim of first amendment retaliation. Furthermore, the defendant's rejection of the plaintiff's application for employment in the commissary constitutes an adverse action against the plaintiff. The defendant argues, however, that the undisputed evidence shows that the decision not to hire him to work in the commissary was not causally connected to his prior grievances. In support of his argument, the defendant submitted to the trial court his affidavit, documents relating to the plaintiff's prior work history at the commissary, and the MacDougall hiring policy. This evidence showed that (1) the plaintiff's prior employment in the commissary was terminated on May 8, 2006, because of a disciplinary report

and a poor work report, and (2) the MacDougall hiring policy, revised as of February 27, 2010, and in effect at the time the plaintiff's application for employment was rejected, explicitly provided that an inmate must meet several conditions prior to being classified to work in the commissary, including not having been previously terminated from a commissary position.

Because the defendant submitted evidence that, if unrebutted, would have entitled him to summary judgment as a matter of law, the plaintiff had the burden to produce some evidence that created a genuine issue of material fact that the refusal to hire him in the commissary was the result of retaliation by the defendant for the plaintiff's earlier grievances, complaints, or lawsuits against other department employees. See *Bruno* v. *Whipple*, 162 Conn. App. 186, 213–14, 130 A.3d 899 (2015) ("Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact *together with the evidence disclosing the existence of such an issue.* . . . It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. . . . Mere assertions of fact, whether contained in a complaint or in a brief, are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Emphasis in original; internal quotation marks omitted.)), cert. denied, 321 Conn. 901, 138 A.3d 280 (2016). The plaintiff failed to produce any such evidence.

First, he produced no evidence disputing his termination from the commissary in 2006. Second, he produced no evidence disputing the existence and applicability of the MacDougall hiring policy. Third, he produced no evidence that the defendant had any role in the adoption of the policy. Fourth, he failed to produce any evidence that the policy was not applied in a consistent fashion to all inmates. Consequently, the plaintiff has failed to submit any evidence to create a genuine issue of material fact that there was a causal connection between his protected first amendment activity and the adverse employment action. See, e.g., *Everitt* v. *DeMarco*, 704 F. Supp. 2d 122, 132 (D. Conn. 2010) ("[i]n order to survive a motion for summary judgment on a [f]irst [a]mendment retaliation claim, a plaintiff must bring forth evidence showing that he was engaged in protected [f]irst [a]mendment activity, he suffered an adverse employment action, and there was a causal connection between the protected [f]irst [a]mendment activity and the adverse employment action" (internal quotation marks omitted)). Consequently, the defendant was entitled to summary judgment on the first count of the plaintiff's complaint.

B

The following legal principles are relevant to our resolution of the plaintiff's discrimination claim in the second count of his complaint. "Although inmates have no right to a particular job assignment while they are incarcerated . . . prison officials cannot discriminate against an inmate by making a job assignment on the basis of race. . . . Proof of discriminatory racial purpose is required to establish an equal protection violation; an official act is not unconstitutional solely because it has a racially disproportionate impact." (Citations omitted; internal quotation marks omitted.) *Williams* v. *Federal Bureau of Prisons & Parole Commission*, 85 Fed. Appx. 299, 305 (3d Cir. 2004).

"It is well established that [p]roof of a racially discriminatory intent or purpose is required to show a violation of the [e]qual [p]rotection [c]lause. . . . Therefore, a plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional. . . .

"It is true that we have previously observed that [m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.] are also applicable to claims of discrimination in employment in violation of . . . the [e]qual [p]rotection [c]lause. . . . But each of those occasions involved individual claims of discrimination, and in each we apply either the [framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (*McDonnell Douglas*)] or a hostile work environment analysis. . . .

"Under the *McDonnell Douglas* framework, a plaintiff establishes a prima facie case of intentional discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination. . . . If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action. . . . If the employer does so, the burden then returns to the plaintiff to demonstrate that race was the real reason for the employer's adverse action. . . . Importantly, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." (Citations omitted; internal quotation marks omitted.) *Reynolds* v. *Barrett*, 685 F.3d 193, 201–203 (2d Cir. 2012).

As set forth previously in this opinion, the defendant, in support of his motion for summary judgment, submitted evidence that the plaintiff's application to work in

the commissary was rejected because he previously had been terminated from working in the commissary and that the MacDougall hiring policy disqualified any inmate who previously had been terminated from being rehired in the commissary. Also, as previously noted, the plaintiff submitted no evidence contesting these basic facts. Furthermore, the plaintiff submitted no evidence to the trial court to support any inference that he was the victim of discrimination. Consequently, despite proffering evidence that tended to show that he is a member of a protected class, qualified for the position, and was subject to an adverse employment action, the plaintiff failed to produce any evidence that would give rise to an inference that he was the victim of discrimination. Indeed, the plaintiff alleged, and the defendant does not dispute, that he is a member of a protected class because he is of Hispanic origin. The plaintiff, through the exemplary performance evaluations that he had received while he was employed as a commissary line worker, also established that he was qualified for the position at issue. Furthermore, the plaintiff established that he suffered an adverse employment action, namely, the inability to obtain employment in the commissary. Where the plaintiff's claim falls short, however, is in his failure to establish that the adverse employment action complained of occurred under circumstances giving rise to an inference of discrimination. Although numerous courts have described the burden of establishing a prima facie case of discrimination under *McDonnell Douglas* as "minimal"; *Walsh* v. *New York City Housing Authority*, 828 F.3d 70, 75 (2d Cir. 2016); bald allegations of intentional discrimination are not sufficient to meet that burden. See *Cohen* v. *Federal Express Corp.*, 383 Fed. Appx. 88, 89 (2d Cir. 2010) (concluding that trial court properly rendered summary judgment because plaintiff offered only conclusory allegations in support of prima facie case of discrimination under *McDonnell Douglas* framework), cert. denied, 565 U.S. 930, 132 S. Ct. 369, 181 L. Ed. 2d (2011). Consequently, "a [trier of fact] cannot infer discrimination from thin air." *Norton* v. *Sam's Club*, 145 F.3d 114, 119 (2d Cir.), cert. denied, 525 U.S. 1001, 119 S. Ct. 511, 142 L. Ed. 2d 124 (1998).

At no point did the plaintiff offer any evidence, direct or circumstantial, that established an inference of discrimination underlying the defendant's rejection of the plaintiff's application for employment in the commissary. We cannot infer from the plaintiff's allegations of discrimination alone that the defendant acted with discriminatory intent.

Even if we were to conclude that the plaintiff established a prima facie case of discrimination under the *McDonnell Douglas* framework, the defendant has met his burden of articulating a legitimate, nondiscriminatory reason for the denial of the plaintiff's application, namely, the MacDougall hiring policy. As stated pre-

viously in this opinion, the MacDougall hiring policy provided in relevant part: "In order to be eligible to be classified to a position in the MacDougall . . . commissary each inmate must meet the conditions stated below. Prior to being classified the inmate must . . . [h]ave not been previously terminated from a commissary position . . . ." The plaintiff's prior termination from his job as a commissary line worker on May 8, 2006, foreclosed any possibility of future employment in the commissary pursuant to the MacDougall policy. Thus, the defendant established a legitimate, nondiscriminatory reason for the denial of the plaintiff's application. Consequently, the plaintiff was required to proffer some evidence that the defendant's justification for his hiring decision was a pretext for racial animus.

In his memorandum of law in opposition to the defendant's motion for summary judgment, the plaintiff essentially asked the court to infer that racial discrimination motivated the defendant's alleged employment decision because "what other reasons [would] the [defendant] . . . have to mess with the plaintiff and have him moved to other units when he was still classified to work for the defendant . . . ?" Given evidence of the nondiscriminatory reason proffered by the defendant, in order to conclude, as the plaintiff's question suggests, that discrimination is the only logical reason for his not being hired, we would have to "infer discrimination from thin air"; *Norton* v. *Sam's Club*, supra, 145 F.3d 119; which is an analytical leap the court cannot and will not make. Consequently, the plaintiff failed to demonstrate the existence of a genuine issue of material fact as to the defendant's discriminatory intent, and, accordingly, his discrimination claim fails as a matter of law.[11]

### III

In his final claim, the plaintiff argues that the court erred by rendering summary judgment in favor of the defendant on the third count of his complaint, which asserted a claim under the takings clause of the fifth amendment to the United States constitution. In its memorandum of decision, the court did not address the merits of the plaintiff's takings claim but, instead, relied on the plaintiff's failure to exhaust administrative remedies as the basis for granting the defendant's motion for summary judgment. We agree that summary judgment was appropriate, albeit for a different reason.

"The [t]akings [c]lause of the [f]ifth [a]mendment provides that no private property shall be taken for public use, without just compensation. . . . The [t]akings [c]lause applies against [s]tate actors through the [f]ourteenth [a]mendment. . . . To state a claim under . . . the [t]akings [c]lause, plaintiffs [a]re required to allege facts showing that state action deprived them of a protected property interest." (Citations omitted; internal quotation marks omitted.) *Abrahams* v. *Dept.*

*of Social Services*, Docket No. 3:16-CV-00552 (CSH), 2018 WL 995106, *9 (D. Conn. February 21, 2018).[12]

"A fundamental tenet in our law is that the plaintiff's complaint defines the dimensions of the issues to be litigated. [T]he right of a plaintiff to recover is limited to the allegations of [his] complaint. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent [surprise. . . . A] plaintiff may not allege one cause of action and recover upon another." (Internal quotation marks omitted.) *Mamudovski* v. *BIC Corp.*, 78 Conn. App. 715, 732, 829 A.2d 47 (2003), appeal dismissed, 271 Conn. 297, 857 A.2d 328 (2004).

In the third count of his complaint, the plaintiff alleged that the policy at MacDougall is to deny employment to immigrants or citizens without Social Security numbers because the department cannot collect the interest accrued on commissary earnings in such inmates' trust accounts. To that end, the plaintiff asserted that "[t]his can be another obstacle the [defendant] [is] using . . . to discriminate [against] the plaintiff . . . ." In his memorandum of law in support of his motion for summary judgment, the defendant argued that "[i]t is unclear how refusing to hire the plaintiff for a commissary job constitutes a taking. In any event, an inmate does not have a constitutionally protected right to a job." In response, the plaintiff asserted that "at no time . . . [did] the plaintiff . . . state in his complaint [that] not hiring the plaintiff constitute[d] a taking . . . ." The plaintiff argued further that, contrary to the defendant's characterization, his takings claim arose out of the defendant's appropriation of the interest on moneys in his inmate trust account.

Having viewed the evidence in the light most favorable to the plaintiff, we conclude that the plaintiff's takings claim fails as a matter of law. As stated previously in this opinion, the plaintiff's right to recover is limited to the allegations as set forth in his complaint. See, e.g., *Mamudovski* v. *BIC Corp.*, supra, 78 Conn. App. 732. Short of his allegation that inmates are denied employment in the commissary for not having a Social Security number, the plaintiff neither alleged nor submitted any evidence regarding an appropriation of *his* property. Nor did he bring forth any evidence of an unconstitutional taking by the defendant. Consequently, the lack of evidence proffered by the plaintiff in support of his takings claim, coupled with the plaintiff's failure to establish the existence of a genuine issue of material fact regarding the defendant's role, if any, in any alleged unconstitutional taking of which the plaintiff complains, leads us to conclude that the plaintiff's takings claim fails as a matter of law.

The form of the judgment is improper, the judgment is reversed only as to the dismissal of the plaintiff's claims in the first and second counts for monetary relief

against the defendant in his individual capacity, and the case is remanded with direction to render summary judgment for the defendant on those counts; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In his complaint, the plaintiff also named as a defendant Steven Plourde, the fiscal administrative supervisor for commissary administration for the Department of Correction. Plourde was sued in his individual and official capacities. At oral argument on the defendant's motion for summary judgment, however, the plaintiff withdrew all counts against Plourde. Accordingly, we refer to Robinson as the defendant.

[2] We need not address in detail the trial court's determination that those counts brought against the defendant in his official capacity are barred because he failed to exhaust his administrative remedies. First, we do not need to address the issue of exhaustion because failure to meet the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e et seq., on which the defendant and the trial court relied, does not implicate the court's subject matter jurisdiction. See *Johnson* v. *Rell*, 119 Conn. App. 730, 734 n.4, 990 A.2d 354 (2010) ("we remind counsel that a prisoner's alleged failure to exhaust administrative remedies properly is the focus of a motion to strike rather than a motion to dismiss, as it does not implicate the subject matter jurisdiction of the court"); see also *Richardson* v. *Goord*, 347 F.3d 431, 434 (2d Cir. 2003) ("Numerous circuits have pointed out that § [1997e] lacks the sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements. . . . We are persuaded by the reasoning of these cases and we likewise conclude that exhaustion is not jurisdictional." (Citations omitted; internal quotation marks omitted.)).

Second, the court's conclusion that it lacked subject matter jurisdiction to consider the plaintiff's damages claim against the state because he did not first obtain permission to sue from the Claims Commissioner misconstrues the claim as seeking damages against the state as opposed to against the defendant in his individual capacity. See footnote 8 of this opinion. Because the plaintiff is seeking damages against the defendant only in his individual capacity, the need to obtain permission to sue from the Claims Commissioner is not implicated. Furthermore, we note that the defendant did not rely on the exhaustion argument in his appellate brief.

[3] At MacDougall, each housing unit is designated by a different letter.

[4] In addition to the federal constitutional claims in his complaint, the plaintiff purported to allege state claims pursuant to article first, §§ 1, 4, 10 and 20, of the Connecticut constitution. The plaintiff, however, failed to provide a separate analysis for his state constitutional claims—as required under *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992)—and, consequently, we decline to review them. See *State* v. *Kiser*, 43 Conn. App. 339, 353–54, 683 A.2d 1021 (declining to review defendant's state constitutional claim because she failed to provide analysis separate from her federal constitutional claim), cert. denied, 239 Conn. 945, 686 A.2d 122 (1996); see also *State* v. *Stanley*, 161 Conn. App. 10, 23 n.13, 125 A.3d 1078 (2015) (same), cert. denied, 320 Conn. 918, 131 A.3d 1154 (2016). Thus, our appellate review is limited to the plaintiff's § 1983 claims that his federal constitutional rights were violated.

[5] Specifically, the plaintiff alleged that he filed two claims with the Commission on Human Rights and Opportunities; see *Sosa* v. *Dept. of Correction*, CHRO No. 0810091; *Sosa* v. *Dept. of Correction*, CHRO No. 1310363; as well as a claim in the Superior Court. See *Sosa* v. *Foltz*, Superior Court, judicial district of New London, Docket No. CV-10-5014068-S (June 4, 2013), appeal dismissed, Docket No. AC 35831 (Conn. App. September 10, 2013).

[6] Although the court noted that the defendant was being sued in his official and individual capacities, its memorandum of decision determined only that the court lacked "subject matter jurisdiction in this matter against the defendant in his individual capacity" and dismissed only "the action brought against the defendant in his individual capacity . . . ." The plaintiff's memorandum of law in opposition to the defendant's motion for summary judgment and his appellate brief make clear that the plaintiff concedes that he seeks money damages against the defendant solely in his individual capacity.

[7] To overcome a bar of sovereign immunity *under state law*, a plaintiff, through the allegations in his complaint, must establish that any one of the

three recognized exceptions to sovereign immunity apply to his claim. *Carter* v. *Watson*, 181 Conn. App. 637, 642, 187 A.3d 478 (2018). The three exceptions to sovereign immunity are: "(1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Internal quotation marks omitted.) Id.

[8] To determine whether an action is against the state or against an officer in his individual capacity, our Supreme Court in *Somers* established four criteria that, if met, render it an action against the state and, therefore, subject to a bar under sovereign immunity. The criteria are: "(1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." (Internal quotation marks omitted.) *Kenney* v. *Weaver*, 123 Conn. App. 211, 216, 1 A.3d 1083 (2010).

[9] It is perplexing to us that the Office of the Attorney General relies on *Somers* and *Spring* and ignores *Sullins*. In fact, the appellee's brief inexplicably does not mention *Sullins*. The failure to discuss this controlling precedent is all the more surprising given that the attorney general not only represents the defendant in this case but also represented the defendant in *Sullins*.

[10] We note that, although the court had jurisdiction to consider the plaintiff's individual capacity claims against the defendant, it could not have granted the declaratory relief the plaintiff sought. "Under the doctrine of *Ex parte Young*, 209 U.S. 123, [28 S. Ct. 441, 52 L. Ed. 714] (1908), *a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law* or an imminent threat of a future violation of federal law. . . . In determining whether *Ex* [*p*]*arte Young* applies, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (Citations omitted; emphasis added; internal quotation marks omitted.) *Baltas* v. *Erfe*, Docket No. 3:19-cv-1820 (MPS), 2020 WL 1915017, *11 (D. Conn. 2020).

Because the plaintiff's claims for declaratory relief request that the court declare that the defendant's *past* conduct and policies were unconstitutional, the relief sought is retrospective and, therefore, is barred by sovereign immunity. See *Puerto Rico Aqueduct & Sewer Authority* v. *Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 205 (1993) ("The doctrine of *Ex parte Young*, which ensures that state officials do not employ the [e]leventh [a]mendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to [e]leventh [a]mendment immunity. . . . Moreover, the exception is narrow: [i]t applies only to prospective relief, [*it*] *does not permit judgments against state officers declaring that they violated federal law in the past* . . . ." (Citations omitted; emphasis added.)).

By contrast, because the plaintiff's request for injunctive relief sought prospective relief, the court could have awarded such relief against the defendant. "[A] state official in his or her official capacity, *when sued for injunctive relief, would be a person under § 1983* because official-capacity actions for prospective relief are not treated as actions against the [s]tate." (Emphasis added; internal quotation marks omitted.) *Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

[11] We also note that the plaintiff, both in his memorandum of law in opposition to the defendant's motion for summary judgment and in his appellate brief, asserts his equal protection claim under a "class-of-one" theory.

"A class-of-one claim exists where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. . . . We have held that to succeed on a class-of-one claim, a plaintiff must establish that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." (Citation

omitted; internal quotation marks omitted.) *Analytical Diagnostic Labs, Inc.* v. *Kusel*, 626 F.3d 135, 140 (2d Cir. 2010), cert. denied, 563 U.S. 1033, 131 S. Ct. 2970, 180 L. Ed. 2d 247 (2011).

As with the plaintiff's claim under the *McDonnell Douglas* framework, the MacDougall hiring policy that disqualified him from employment in the commissary, coupled with his failure to proffer any evidence in support of his allegations of discrimination, render his claim under a class of one theory meritless.

[12] We note that sovereign immunity is not a defense to a properly pleaded takings claim under the United States constitution. See also *184 Windsor Avenue, LLC* v. *State*, 274 Conn. 302, 319, 875 A.2d 498 (2005) (sovereign immunity is not available as defense to takings clause under state constitution).

———————————————