******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

GEORGE BONGIORNO ET AL. *v.*
J & G REALTY, LLC, ET AL.
(AC 42790)
(AC 42791)

Alexander, Clark and Lavine, Js.

*Syllabus*

The plaintiffs, M and her daughter B, sought, inter alia, the dissolution and
winding up of the defendant businesses, which were established by M's
husband and his brother. At the time of the commencement of the
action, certain of the defendant businesses were held in equal shares
by B and her three siblings. The defendants filed a motion to dismiss
M's claims for lack of subject matter jurisdiction, alleging that she did
not have an ownership interest in any of the defendant businesses and,
accordingly, that she lacked standing to bring the action. The trial court
granted the defendants' motion. Thereafter, B amended the complaint
and cited in M as a plaintiff. In the amended complaint, M and B alleged,
inter alia, claims of oppression of a minority member, breach of fiduciary
duty, unjust enrichment, and fraud against the defendant businesses
and their defendant managers, F and N. B also sought the dissolution
of the defendant businesses of which she was a member. M alleged that
she had standing to bring the action because she had, inter alia, an
economic interest in certain of the defendant businesses. The trial court
rendered judgment in favor of the defendants on M's claims, stating that
they were barred by res judicata, that there was no proof that any
financial distributions had been made to the members or partners of
the defendant businesses or that any of the defendant businesses had
been dissolved that would entitle M to a distribution of the assets, and
that she lacked standing to maintain the action in an individual capacity
because any claim she might have could be asserted only in a derivative
action. The trial court further found that B lacked standing in her individ-
ual capacity to maintain her claims for breach of fiduciary duty, except
with respect to her claim that the defendant managers had failed to
provide her with access to the books and records of certain of the
defendant businesses, a claim that she abandoned on appeal, and that
she had failed to demonstrate that the defendant managers engaged in
any act of fraud or self-dealing or had violated their fiduciary duties.
On the plaintiffs' appeals to this court, *held*:

1. With respect to M's claims that the trial court erred by disposing of her
claims for breach of fiduciary duty on the basis of res judicata and by
finding that she lacked standing to directly sue for breach of fiduciary
duty, this court could not grant M any practical relief, and her appeal
was dismissed as moot: although, on appeal, M acknowledged all four
of the independent bases that the trial court articulated for rendering
judgment in favor of the defendants on each of her claims, she failed
to adequately brief her challenges to the trial court's determinations
that no distributions had been made or dissolutions had occurred that
would entitle a holder of an economic interest to a distribution, and,
therefore, she abandoned those claims; accordingly, because M failed
to challenge each independent basis for the trial court's decision, this
court lacked subject matter jurisdiction and did not reach the merits
of M's claims.

2. With respect to B's claim that the trial court erred when it failed to shift
the burden to F and N to prove good faith and fair dealing regarding
her breach of fiduciary duty claims, this court could not grant any
practical relief, and her appeal as to that issue was dismissed as moot:
B failed to appeal from the trial court's conclusion that she did not have
standing to sue in her individual capacity, which was an alternative
basis for the trial court's judgment on her claim; accordingly, because
M failed to challenge each independent basis for the trial court's decision,
this court lacked subject matter jurisdiction.

3. This court declined to exercise its supervisory authority with respect to
B's claims of oppression of a minority member and for the dissolution
and winding up of certain of the defendant businesses and, accordingly,

affirmed the judgment of the trial court: the Connecticut Uniform Limited Liability Company Act (CULLCA) (§ 34-243 et seq.) did not apply to B's claims because it applies only to an action commenced, a proceeding brought or a right accrued after July 1, 2017, and B commenced this action in 2012 and failed to present evidence of any events occurring after July 1, 2017, to support her claims; accordingly, contrary to B's assertion, the standard for analyzing oppressive conduct under CULLCA that was set forth in *Manere* v. *Collins* (200 Conn. App. 356) did not apply to her claims.

Argued October 19, 2021—officially released March 22, 2022

*Procedural History*

Action seeking, inter alia, the dissolution of the defendant entities, and other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Truglia, J.*, granted the defendants' motion to dismiss the claims of the plaintiff Marie Bongiorno; thereafter, the plaintiff Marie Bongiorno was cited in as a plaintiff; subsequently, the matter was tried to the court, *Hon. Kevin Tierney*, judge trial referee; judgment for the defendants, from which the plaintiffs filed separate appeals to this court. *Appeal dismissed in Docket No. 42790*; *appeal dismissed in part, judgment affirmed in Docket No. 42791*.

*Danielle J. B. Edwards*, with whom, on the brief, was *Peter V. Lathouris*, for the appellants in Docket Nos. AC 42790 and AC 42791 (plaintiffs).

*Mark F. Katz*, for the appellees in Docket Nos. AC 42790 and AC 42791 (named defendant et al.).

*Opinion*

ALEXANDER, J. These appeals arise out of a decade of litigation among members of the Bongiorno family with respect to certain commercial real property and businesses in Stamford. Following a trial to the court, the plaintiffs Marie Bongiorno (Marie) and her daughter, Bridjay Capone (Bridjay),[1] appeal from the judgment of the trial court rendered in favor of the defendants J & G Realty, LLC; 305 West Avenue, LLC; 24 Ardmore Street, LLC; Bongiorno Gas Island, LLC; Bongiorno Brothers, a general partnership (Bongiorno Brothers); Harxter Realty, LLC; Enterprise Park, L.L.C.; Glenbrook Center, LLC; Bongiorno Supermarket, Inc.; Jane Doe Entities; Frank R. Bongiorno (Frank); and Maurice A. Nizzardo (Maurice).[2] In Docket No. AC 42790, Marie claims that the trial court erred by (1) disposing of her claims for breach of fiduciary duty against Frank and Maurice on the basis of res judicata and (2) finding that she lacked standing to bring claims in her own name for breach of fiduciary duty. We dismiss Marie's appeal as moot. In Docket No. AC 42791, Bridjay claims that (1) the trial court erred by failing to shift the burden to Frank and Maurice to prove good faith and fair dealing on her breach of fiduciary duty claims and (2) this court should exercise its supervisory authority to reverse the judgment of the trial court as to her claims of oppression of a minority member. In regard to her breach of fiduciary duty claims, we dismiss Bridjay's appeal as moot, and we affirm the judgment of the trial court in all other respects.

The following factual background and procedural history are relevant to our resolution of these appeals. The businesses at issue grew out of a partnership initiated between now deceased brothers George Bongiorno (George) and John Bongiorno when they opened Bongiorno Supermarket in Stamford in 1957. The brothers later purchased commercial properties and established a retail gas station, a car wash, a liquor store, and other businesses near the supermarket (Bongiorno businesses).

John Bongiorno had no children and allegedly agreed that, on his death, he would leave his interests in the Bongiorno businesses in equal shares to George's children: Frank, John A. Bongiorno, Bridjay, and Michele B. Nizzardo. John Bongiorno died in 2003, but did not leave his interests in the Bongiorno businesses to George's children. George, however, negotiated an agreement pursuant to which his children, Maurice, and Bongiorno Supermarket, Inc., purchased John Bongiorno's interests from John Bongiorno's estate in 2004. As part of the agreement, the estate of John Bongiorno assigned a 12.5 percent membership interest in J & G Realty, LLC, to each of George's children. At the time of the agreement, J & G Realty, LLC, held title to real property that subsequently was owned by 305 West Avenue, LLC, and 24 Ardmore Street, LLC, businesses that were

founded in 2004, following John Bongiorno's death. The agreement further provided that the estate of John Bongiorno would transfer 12.5 percent of the shares in those two properties to each of George's four children. Thereafter, George also transferred his 50 percent interest in 305 West Avenue, LLC, and 24 Ardmore Street, LLC, in equal shares to his four children. On January 22, 2012, George transferred his 50 percent interest in J & G Realty, LLC, in equal shares to his four children. Consequently, each of George's four children held a 25 percent interest in each of the three LLCs.

In June, 2012, George, Marie, and Bridjay commenced the underlying action seeking dissolution and winding up of the Bongiorno businesses. In 2013, George withdrew from the litigation. In the original complaint, Marie alleged that she was or had the right to be a member of certain defendant entities, either directly or by virtue of a durable power of attorney executed in her favor by George in 2010, and she sought to wind up and dissolve those entities. In 2013, the defendants filed a motion to dismiss Marie's claims for lack of subject matter jurisdiction, claiming that Marie did not have an ownership interest in any of the four entities[3] she claimed to be a member of and, thus, lacked standing to bring the action. The trial court, *Truglia, J.*, granted the motion to dismiss after determining that George's purported assignment of his interests in these entities was ineffective and that Marie had not "demonstrated a specific, personal or legal interest" in any of the entities that would enable her to bring an action for dissolution and winding up. See *Bongiorno* v. *J & G Realty, LLC*, 162 Conn. App. 430, 435, 131 A.3d 1230, cert. denied, 320 Conn. 924, 133 A.3d 878 (2016).

Thereafter, the court, *Hon. Kevin Tierney*, judge trial referee, granted Bridjay's motion to cite in Marie as a plaintiff and to amend the complaint. In the amended complaint, Marie alleged that she had, inter alia, an economic interest in J & G Realty, LLC, Bongiorno Brothers, and Bongiorno Gas Island, LLC.[4] Marie again relied on the October, 2010 documents that purported to transfer George's interest in these entities to Marie.

The operative complaint is the July 5, 2018 second amended complaint. It contains seventy-two counts, alleging claims of oppression of a minority member/shareholder interest, breach of fiduciary duty, fraud, unjust enrichment, statutory theft, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[5] Bridjay also sought the dissolution of the three LLCs. The remaining individual defendants were Frank and Maurice (individual defendants), who are the comanagers of certain defendant entities and co-property managers of the real property owned by certain defendant entities. Frank and Maurice are Marie's son and son-in-law, respectively.

The case was tried to Judge Tierney on eighteen dates

between May 31, 2018, and July 24, 2018. In their post-trial brief, the plaintiffs claimed that they had identified eight separate "suspicious" transactions, which included (1) awarding management fees to the individual defendants, (2) paying the legal fees of other businesses and members, (3) paying real estate commissions to the individual defendants, (4) failing to pay distributions despite showing impressive profits, (5) failing to collect rents from M & F Car Wash, LLC, another entity managed by the individual defendants, and Bongiorno Gas Island, LLC, (6) failing to collect loans due from Bongiorno Brothers, (7) failing to give Bridjay access to the books and records of the businesses, and (8) failing to disclose George's transfer of membership interests to his children. On March 12, 2019, the court issued a 107 page memorandum of decision, rejecting each of the plaintiffs' allegations of " 'suspicious transactions' " and finding "the issues on all counts, count one through and including count seventy-two, in favor of all of the defendants . . . ."

In rendering judgment in favor of the defendants on Marie's claims, the court relied on the independent grounds that (1) her claims were barred by the doctrine of res judicata, (2) there was no proof that any financial distributions had been made to any of the members or partners of the defendant businesses after the date of the alleged transfer of interests to Marie, (3) there was no proof that any of the businesses had been dissolved that would entitle her to a distribution of the assets, and (4) she lacked standing to maintain the action in her individual capacity because any claim that she might have would be common to all members and partners of the defendant entities and may be asserted only in a derivative action.[6]

With respect to Bridjay's claims, the court determined that she lacked standing in her individual capacity to maintain claims of breach of fiduciary duty with respect to all of the alleged " 'suspicious transactions,' " except for her claim that the individual defendants had failed to provide her with access to the books and records of the three LLCs. The court found that none of the injuries Bridjay allegedly sustained was " 'separate and distinct' " from those suffered by other members of the three LLCs, and such claims could be asserted only in a derivative action. Bridjay, therefore, had standing only to maintain her breach of fiduciary duty claim with respect to the individual defendants' alleged failure to provide her access to the books and records of the businesses. The court found that Bridjay had failed to demonstrate that Frank and Maurice had engaged in any act of fraud or self-dealing or had a conflict of interest and that neither individual defendant had violated his fiduciary duty. The court, therefore, rendered judgment in favor of the defendants.

Thereafter, the plaintiffs filed a motion for articula-

tion, which the court denied. The plaintiffs then filed a motion for review with this court. This court granted the motion for review and denied in part and granted in part the relief requested.[7] Additional facts with be set forth as necessary.

## I

## AC 42790

We first address Marie's appeal in AC 42790, in which she argues that the trial court erred by (1) disposing of her claims for breach of fiduciary duty against Frank and Maurice on the basis of res judicata and (2) finding that she lacked standing to sue directly for breach of fiduciary duty. Marie has failed, however, to challenge the second and third bases of the trial court's decision because she has briefed them inadequately. Because Marie has failed to challenge each independent basis for the trial court's decision, her appeal is moot.

This appeal implicates two important doctrines of justiciability: standing and mootness. "[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Cunningham* v. *Cunningham*, 204 Conn. App. 366, 381, 254 A.3d 330 (2021). "[O]nce the question of the court's subject matter jurisdiction is raised, it must be resolved before the court addresses the merits of the plaintiff's claims." *Sosa* v. *Robinson*, 200 Conn. App. 264, 276, 239 A.3d 1228 (2020); see also *Kelly* v. *Albertsen*, 114 Conn. App. 600, 607, 970 A.2d 787 (2009) ("[a]s soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to a halt until such a determination is made" (internal quotation marks omitted)).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [If] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Hilario's Truck Center, LLC* v. *Rinaldi*, 183 Conn. App. 597, 603, 193 A.3d 683, cert. denied, 330 Conn. 925, 194 A.3d 776 (2018). "Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]. Similarly, standing exists to attempt to vindicate arguably protected interests." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214, 982 A.2d 1053 (2009). "The question of standing does not involve an inquiry

into the merits of the case." (Internal quotation marks omitted.) *State* v. *Gaston,* 201 Conn. App. 276, 281, 241 A.3d 209, cert. denied, 335 Conn. 981, 241 A.3d 705 (2020).

Although we recognize the trial court's important obligation to decide issues regarding standing prior to addressing the merits of a claim, we also are mindful of this court's obligation to consider its own subject matter jurisdiction and whether we can afford a party any practical relief. In other words, we also must determine whether an appeal is moot. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . A determination regarding . . . [this court's] subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; internal quotation marks omitted.) *Fairfield Shores, LLC* v. *DeSalvo*, 205 Conn. App. 96, 104–105, 256 A.3d 716 (2021).

"Where an appellant fails to challenge all bases for a trial court's adverse ruling on [her] claim, even if this court were to agree with the appellant on the issues that [she] does raise, we still would not be able to provide [her] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims. . . . Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Citation omitted; internal quotation marks omitted.) *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017); see also *Hartford* v. *CBV Parking Hartford, LLC*, 330 Conn. 200, 210, 192 A.3d 406 (2018) ("if there exists an unchallenged, independent ground to support a decision, an appeal from that decision would be moot, as this court could not afford practical relief even if the appellant were to prevail on the issue raised on appeal").

Given the facts and circumstances of the present case, we resolve Marie's appeal on the basis of appellate mootness. This appeal presents two justiciability questions that implicate both this court's and the trial court's subject matter jurisdiction, and we are cognizant of the importance of resolving issues of standing prior to addressing the merits of a plaintiff's claims. In the present case, however, the issue of Marie's standing as the holder of an economic interest was not clearly analyzed or decided by the trial court in its memorandum of decision. Because Marie failed to challenge each independent basis for the trial court's decision, we conclude that this court lacks subject matter jurisdiction. Accord-

ingly, we do not reach the merits of her claims and dismiss her appeal as moot.

As previously stated, the trial court articulated four independent bases for rendering judgment in favor of the defendants on each of Marie's claims. In her brief, Marie challenges only the first and fourth grounds for the court's decision. Although she acknowledges the second and third grounds for the court's decision, she failed to brief these issues adequately, and, therefore, we deem those claims abandoned.[8] "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Traylor* v. *State*, 332 Conn. 789, 804–805, 213 A.3d 467 (2019). "Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Internal quotation marks omitted.) *Manere* v. *Collins*, 200 Conn. App. 356, 358 n.1, 241 A.3d 133 (2020); see also *Barros* v. *Barros*, 309 Conn. 499, 503 n.4, 72 A.3d 367 (2013) (claim deemed abandoned when defendant merely referenced actions by trial court but failed to provide any legal analysis).

The trial court had determined that no distributions had been made and no dissolution had occurred that would entitle a holder of an economic interest to a distribution. Because Marie has not challenged these independent bases for the court's decision, we cannot grant her any practical relief, and, thus, we dismiss her appeal as moot.

II

AC 42791

We now turn to Bridjay's appeal in AC 42791. At trial, the parties agreed that Bridjay holds a 25 percent interest in the three LLCs. The parties also agreed that, as managers of the three LLCs, Frank and Maurice owed a fiduciary duty to the members of the three LLCs, including Bridjay. On appeal, Bridjay first claims that the trial court erred by failing to shift the burden to Frank and Maurice to prove good faith and fair dealing regarding her breach of fiduciary duty claims. Second, she argues that this court should exercise its supervisory authority to reverse the judgment of the trial court as to her claims of oppression of a minority member. We conclude that Bridjay's first claim is moot. With respect to her second claim, we decline to exercise our supervisory authority and, accordingly, affirm the judgment of the trial court.

A

Bridjay first claims that the trial court erred when it failed to shift the burden to Frank and Maurice to prove good faith and fair dealing on her breach of fiduciary duty claims. We conclude that her appeal as to this issue is moot because she failed to challenge all independent bases for the trial court's decision in favor of Frank and Maurice.

As discussed in part I of this opinion, Bridjay set forth eight categories of allegedly "suspicious" transactions to support her claims for breach of fiduciary duty against Frank and Maurice as the managers of the three LLCs in her posttrial brief. In its memorandum of decision, the court stated that Bridjay "failed to show that [Frank and Maurice] engaged in any act of fraud, self-dealing or conflict of interest. The court finds that the burden has not shifted to the two fiduciaries, to demonstrate the evidence by the clear and convincing standard." Additionally, it concluded that, "[o]f the eight 'suspicious transactions' . . . all but . . . inspection of books and records, are common to all of the members of the three LLCs. None of these claims, damages and 'suspicious transactions' are 'separate and distinct' as to [Bridjay], except for the inspection of books and records . . . claim . . . . The court finds that [Bridjay] has no standing to maintain this lawsuit against any of the defendants given it is not a derivative action. The court finds that [Bridjay] has standing to maintain the claims that she has brought as to [the] issue . . . relating to the inspection of the books and records of the three LLCs for which she has a [25 percent] interest."

On appeal, Bridjay claims that the court improperly failed to shift the burden to Frank and Maurice on her claims of breach of fiduciary duty. She contends that, once a fiduciary relationship was shown, together with "only an *allegation*, rather than proof, of fraud . . . self-dealing or conflict of interest"; (emphasis in original); the trial court should have shifted the burden to Frank and Maurice to prove good faith and fair dealing by clear and convincing evidence.[9] She then sets forth the first six of the original eight suspicious transactions as evidence of the breach of fiduciary duty.

Pursuant to our analysis in part I of this opinion, we recognize that, once the trial court determined that Bridjay lacked standing to bring her claims of breach of fiduciary duty in an individual capacity, the court should have dismissed those claims rather than address them on the merits. See *Sosa* v. *Robinson*, supra, 200 Conn. App. 276. Because Bridjay failed to appeal from each independent basis for the court's judgment, we conclude that this court lacks subject matter jurisdiction and resolve this appeal on the basis of appellate mootness.

In its findings, the court determined that each of the " 'suspicious transactions' " Bridjay alleged in support

of her breach of fiduciary duty claims, except the claim regarding inspection of the books and records,[10] were common to all members of the three LLCs, and, therefore, that she did not have standing to sue in her individual capacity. This conclusion was one independent basis for the court's ruling in favor of the defendants. As an alternative basis for its judgment, the court concluded that Bridjay had failed to meet her burden of proof in establishing her breach of fiduciary duty claims and, therefore, that the burden of proving fair dealing did not shift to Frank and Maurice. Bridjay has not appealed from the court's conclusion that she does not have standing to sue in her individual capacity. Thus, we cannot afford her any practical relief and conclude that her appeal as to this issue is moot.

B

Bridjay's second claim on appeal asks this court to exercise its supervisory authority to reverse the judgment of the trial court as to her claims of oppression of a minority member against the three LLCs, Frank, and Maurice and as to her claims for the dissolution and winding up of the three LLCs. In the alternative, she requests that the case should be remanded for a new trial as to those claims. Specifically, she claims that the standard set forth in *Manere* v. *Collins*, supra, 200 Conn. App. 384–85, for analyzing oppressive conduct in limited liability companies applies to her claims. We decline to exercise our supervisory power because we conclude that the standard for analyzing oppressive conduct set forth in *Manere* is not applicable in the present case.

The following additional facts are relevant to the resolution of this claim. In counts one through five of the operative complaint, Bridjay alleged claims of oppression of a minority member against the three LLCs, Frank, and Maurice. In addition, in counts seventy through seventy-two, Bridjay requested that the three LLCs be dissolved and wound up and that all of their assets be distributed to the rightful owners. The ground for this requested relief was, inter alia, oppressive conduct pursuant to General Statutes (Rev. to 2017) §§ 34-207 and 34-208 (a) (2)[11] and General Statutes § 34-267 (a) (5).[12]

In her posttrial brief, Bridjay argued that the defendants "have engaged in a pattern of conduct aimed at suppressing her minority membership interest in the [entities of which she is a member]." In support of her claim of oppression, Bridjay argued that she "has been generally frozen out of the business" and relied on the aforementioned eight "suspicious" transactions to support her claims of breach of fiduciary duty. Furthermore, Bridjay claimed that Frank and Maurice are managing members of other entities, namely, Harxter Realty, LLC, Glenbrook Center, LLC, and 317 West Avenue, LLC, and that these entities have provided distribu-

tions to both Frank and Maurice. Therefore, Frank and Maurice have "the financial wherewithal to sustain withholding distributions from [the three LLCs] because they have alternative income streams which are uncontrovertibly independent of Bridjay . . . . [S]aid information, given the totality of the circumstance[s], allows [the trial] court to draw inferences that the foregoing conduct has impacted [Bridjay] the most severely and was done with the specific intention of suppressing her interests and/or to punish her for aligning herself with her mother, [Marie], in the various Bongiorno legal battles." (Footnote omitted.)

In its memorandum of decision, the court noted that, as a member of the three LLCs, Bridjay had standing to seek the dissolution and winding up of the three LLCs. The court then discussed the evidence offered by the plaintiffs at trial, which included federal income tax returns for the three LLCs. "Exhibit 67 contained the tax returns for 24 Ardmore Street, LLC, for the years 2005 through and including 2017. Exhibit 68 contained the tax returns for 305 West Avenue, LLC, for the years 2007 through and including 2017. Exhibit 69 contained the tax returns for J & G Realty, LLC, for the years 2000 through and including 2017. . . . Nowhere in those three 2017 federal income tax returns is there any allocation of events, income, expenses, deductions, and credits after July 1, 2017. The monetary evidence before this court of any financial breaches after July 1, 2017, was missing from this trial. No doubt rent was received and management fees were paid from and after July 1, 2017, but no evidence was offered as to the amounts from and after July 1, 2017. The three federal income tax returns for 2017 failed to allocate and differentiate pre-July 1, 2017 finances from post-July 1, 2017 finances. This court has insufficient evidence, likewise, to do the same. This court, confronted by the very limited evidence of post-July 1, 2017 finances, will not apply the Connecticut [Uniform] Limited Liability Company Act [(CULLCA), General Statutes § 34-243 et seq.], in this memorandum of decision. . . . This court will apply the dissolution and winding up statutes, both pre-July 1, 2017 and post-July 1, 2017, to those three counts."[13] (Citation omitted.)

The court stated that "[Bridjay], as the member of the three LLCs has filed three counts seeking dissolution of each of the three LLCs . . . . Those claims are rejected . . . since [Bridjay] has failed to sustain her burden of proof. . . . As a factual allegation in support of her dissolution and winding up counts, [Bridjay] alleges: 'The conduct of all or substantially all of the defendant[s'] . . . activities and affairs are unlawful and/or it is not reasonably practicable to carry on the business in conformity with its operating agreement, articles of organization and/or the interests of the members.' . . . The three operating agreements were in evidence. No 'articles of organization' were placed in evi-

dence. . . . The operating agreements contain only two provisions for dissolution in Article XIV, Section 14.01 Termination: (1) the unanimous decision of the Members to dissolve the LLC or, (2) the sole Member of the LLC being a Dissociating Member. . . .

"This court has discussed in detail the claim of mismanagement alleged by the plaintiffs and has found no support for those claims in this trial. . . . The court finds that no event of dissolution has occurred as set forth in the operating agreement. The court finds that [Bridjay] has failed to satisfy the proof required for the dissolution and winding up of the three LLCs. The court finds insufficient evidence that 'it is not reasonably practicable to carry on the business in conformity with its operating agreement . . . or the interests of the members.' The court finds that neither [Frank] as a member or manager of the three LLCs [nor Maurice] as manager of the three LLCs has engaged in any 'unlawful conduct . . . .'" (Citations omitted.) It further stated that it "cannot find as a matter of fact that there [were] any financial misdealings by [Frank] or [Maurice] in any fashion whatsoever. . . . [Bridjay has] failed to sustain [her] burden of proof as to the counts alleging . . . oppression."

On appeal, Bridjay asks this court to exercise its supervisory power to reverse the decision of the trial court in regard to her claims of oppression and dissolution or, in the alternative, to order a new trial, in light of this court's decision in *Manere* v. *Collins*, supra, 200 Conn. App. 356.[14] We decline to exercise our supervisory power and affirm the judgment of the trial court.

"It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice in all aspects of the criminal process." (Citation omitted; internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 764–65, 91 A.3d 862 (2014).

"Supervisory authority is an extraordinary remedy that should be used sparingly . . . . Although [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle. . . . Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived

fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Fuller*, 158 Conn. App. 378, 392, 119 A.3d 589 (2015).

In *Manere* v. *Collins*, supra, 200 Conn. App. 378, this court interpreted the meaning of the word " 'oppression' " as used in CULLCA. Specifically, this court interpreted the meaning of that word as used in § 34-267 (a) (5). Id. The plaintiff in *Manere* was a member and manager of a limited liability company, BAHR. Id., 359–60. On appeal, the plaintiff claimed, inter alia, that the trial court improperly rejected his application for a dissolution of BAHR pursuant to § 34-267 (a) (5) on the ground of oppressive conduct by BAHR's only other member and manager. Id., 360, 376.

In *Manere*, this court adopted the " 'reasonable expectations' " test as the applicable standard when analyzing a claim of oppression under § 34-267 (a) (5). Id., 384. Under that standard, "a majority member's conduct is oppressive if that conduct substantially defeats the minority member's expectations which, objectively viewed, were both reasonable under the circumstances and were central to his or her decision to join the venture or developed over time." Id., 389. Further, if the court makes a finding of oppression, it must also determine whether the oppressive conduct " 'was, is, or will be directly harmful to the applicant . . . .' " Id., 392.

We do not agree with Bridjay's contention that this court's decision in *Manere* warrants the exercise of our supervisory power to reverse the trial court's judgment as to her claims of oppression and dissolution. In *Manere*, the court interpreted the meaning of the word " 'oppression' " as used in § 34-267 (a) (5), which is part of CULLCA. Id., 378. General Statutes § 34-283b states that "Sections 34-243 to 34-283d, inclusive, do not affect an action commenced, proceeding brought or right accrued before July 1, 2017." In her own posttrial brief, Bridjay argued that the legislature did not intend for the CULLCA to apply retroactively.[15] Therefore, because Bridjay failed to present evidence of events occurring after July 1, 2017, to support her claims of oppression and dissolution, § 34-267 does not apply to her claims.

Bridjay commenced the present action in 2012. The trial court discussed that, in the evidence presented by Bridjay to the court in the form of tax returns, there were no allocations of "events, income, expenses, deductions, and credits after July 1, 2017." It further stated that it would not apply CULLCA in its decision. Therefore, the provisions of CULLCA, and specifically § 34-267 (a) (5), do not apply in the present case. Because the " 'reasonable expectations' " standard set forth in *Manere* v. *Collins*, supra, 200 Conn. App. 384–85, applies to claims of oppression arising under § 34-267 (a) (5), that standard does not apply in the present case. We, therefore, affirm the judgment with respect

to this claim.

The appeal in Docket No. AC 42790 is dismissed; the appeal in Docket No. AC 47291 is dismissed as to Bridjay Capone's breach of fiduciary duty claims, and the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The underlying action was commenced in 2012 by the late George Bongiorno (George), his wife, Marie, and their daughter, Bridjay. George withdrew from the action in 2013. In this appeal, we refer to Marie and Bridjay collectively as the plaintiffs and individually as Marie and Bridjay.

[2] The plaintiffs brought this action against the following individuals and business entities: J & G Realty, LLC; 24 Ardmore Street, LLC; 305 West Avenue, LLC; Harxter Realty, LLC; Enterprise Park, L.L.C.; Bongiorno Gas Island, LLC; Glenbrook Center, LLC; Bongiorno Brothers; Bongiorno Supermarket, Inc.; The Bongiorno Family, LLC; JGBBNS Realty, LLC; 317 West Avenue, L.L.C.; 317 West Avenue, LLC; Weselleck, LLC; Bongiorno Childrens Joint Venture #3; Jane Doe Entities (other entities unknown to the plaintiffs that were allegedly owned or controlled by the individual defendants); Frank; Maurice; Michele B. Nizzardo; and John A. Bongiorno.

Prior to trial, the plaintiffs withdrew the action against all of the defendants except J & G Realty, LLC; 24 Ardmore Street, LLC; 305 West Avenue, LLC; Harxter Realty, LLC; Enterprise Park, L.L.C.; Bongiorno Gas Island, LLC; Glenbrook Center, LLC; Bongiorno Brothers; Bongiorno Supermarket, Inc.; Frank; and Maurice. At the time of trial, Bongiorno Supermarket, Inc., and Jane Doe Entities remained defendants but were not represented by counsel of record.

In this opinion, we refer to J & G Realty, LLC, 24 Ardmore Street, LLC, and 305 West Avenue, LLC, collectively as the three LLCs.

[3] In her posthearing memorandum, Marie alleged that she held an ownership interest in JGBBNS Realty, LLC, J & G Realty, LLC, Bongiorno Gas Island, LLC, and Bongiorno Brothers.

[4] Marie claimed at trial and in this appeal that "our laws recognize the existence of an economic interest which is separate and distinct from a right to participate in the management/business affairs of an entity."

She relied on, inter alia, General Statutes (Rev. to 2017) § 34-170, which provides in relevant part: "(a) Except as provided in writing in an operating agreement and subject to the provisions of subsections (b) and (c) of section 34-119: (1) A limited liability company membership interest is assignable in whole or in part; (2) an assignment entitles the assignee to receive, to the extent assigned, only the distributions to which the assignor would be entitled . . . ."

Essentially, Marie argued that, although George had failed to transfer his full membership interest in the entities to her, which would have given her all the rights of a member, such as voting rights, the transfer was effective in granting her the status of an economic transferee, which includes the right to receive distributions.

[5] In their posttrial brief, the plaintiffs expressly abandoned "all claims sounding in statutory theft and breach of the [CUTPA] as alleged in the second amended complaint."

[6] "It is axiomatic that a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . [I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. [When], for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them. . . .

"A limited liability company is a distinct legal entity whose existence is separate from its members. . . . [It] has the power to sue or to be sued in its own name . . . or may be a party to an action brought in its name by a member or manager. . . . A member or manager, however, may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company. . . . [A] member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company, except where the object of the proceeding is to enforce a member's or manager's right against or liability to the limited liability company or as otherwise provided in an operating agreement . . . ." (Cita-

tions omitted; internal quotation marks omitted.) *Scarfo* v. *Snow*, 168 Conn. App. 482, 497–98, 146 A.3d 1006 (2016).

"A corporation is a separate legal entity, separate and apart from its stockholders. . . . It is an elementary principle of corporate law that . . . corporate property is vested in the corporation and not in the owner of the corporate stock. . . . That principle also is applicable to limited liability companies and their members. . . .

"[T]he law [permits] shareholders to sue derivatively on their corporation's behalf under appropriate conditions. . . . [I]t is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily, deriving his rights from the corporation which is alleged to have been wronged. . . . [I]n order for a shareholder to bring a direct or personal action against the corporation or other shareholders, that shareholder must show an injury that is separate and distinct from that suffered by any other shareholder or by the corporation." (Citation omitted; internal quotation marks omitted.) Id., 501.

Our Supreme Court, in *Saunders* v. *Briner*, 334 Conn. 135, 158–59, 221 A.3d 1 (2019), concluded that the "[Connecticut Limited Liability Company Act (CLLCA), General Statutes (Rev. to 2017) § 34-100 et seq.] does not permit members or managers to file derivative actions but, rather, authorizes them to collectively commence an action in the name of the limited liability company upon a requisite vote of disinterested members or managers (member initiated action). . . . [General Statutes (Rev. to 2017) §] 34-187 provides the procedure that members or managers must follow if they wish to file a lawsuit in the name of the company." (Citation omitted; footnote omitted.) The court stated that, "because of the closely held nature of many [limited liability companies] there may be little difference between the derivative remedy and the one proposed in this section." (Internal quotation marks omitted.) Id., 162 n.28. The court noted the general rule that prohibits a member of a limited liability company from bringing a direct action when the injury sustained affects all of the shareholders collectively and stated that, although the CLLCA did not authorize derivative actions, it "provided a substitute to the derivative remedy" in the form of the member initiated action. Id., 167–69.

[7] In this court's order granting in part the relief requested in the plaintiffs' motion for review, this court ordered the trial court to "reconcile its statements on pages 40 and 42–43 of its March 12, 2019 memorandum of decision by articulating whether it found that [Maurice] received any assets pursuant to the 2004 purchase agreement with the estate of John Bongiorno."

In its rectification, the trial court stated: "On page 43 line 1, the trial court makes the following changes to the first partial sentence at the top of page 43: (A) Eliminate 'any assets' and substitute therefore 'any real property at issue in this litigation,' immediately before the phrase, 'in the settlement of the Estate of John Bongiorno,' and (B) add the following sentence immediately after the above sentence: 'The real property at issue in this litigation [is] the three parcels of real property described on page 40 in paragraph numbered (5).' "

[8] Marie stated with respect to the trial court's second and third bases for its decision: "First, this court should take note of the trial court's second and third grounds for dismissal, which are cabined under res judicata: (2) there are presently no distributions to dispute, and (3) there is presently no dissolution to dispute. Read together with the court's opening statement that 'it is not necessary for [it] to determine whether or not the plaintiff . . . possesses an economic interest in the three entities,' these two issues serve as a very serious warning: should any of the entities make distributions or dissolve, there will immediately be cause for new litigation in order to ascertain [the] very issue on appeal here: the validity of the plaintiff's claimed economic interest."

[9] "The elements which must be proved to support a conclusion of breach of fiduciary duty are: [1] [t]hat a fiduciary relationship existed which gave rise to . . . a duty of loyalty . . . an obligation . . . to act in the best interests of the plaintiff, and . . . an obligation . . . to act in good faith in any matter relating to the plaintiff; [2] [t]hat the defendant advanced his or her own interests to the detriment of the plaintiff; [3] [t]hat the plaintiff sustained damages; [and] [4] [t]hat the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." (Internal quotation marks omitted.) *Manere* v. *Collins*, supra, 200 Conn. App. 366–67.

"Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard

of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence. . . . Proof of a fiduciary relationship, therefore, generally imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence. . . . Such burden shifting occurs in cases involving claims of fraud, self-dealing or conflict of interest." (Citation omitted; internal quotation marks omitted.) *Papallo* v. *Lefebvre*, 172 Conn. App. 746, 754, 161 A.3d 603 (2017).

[10] The court concluded that Bridjay had standing to bring her claim of breach of fiduciary duty as to the allegation that the defendants did not allow her to inspect the books and records, which was set forth as the seventh "suspicious" transaction in Bridjay's reply to the defendants' posttrial brief. The court, however, rejected this claim, stating that it "made inquiry daily at the beginning of the trial day, if there were any other discovery matters that needed to be resolved. The plaintiffs made no claim of lack of discovery during the trial. Until the plaintiffs' posttrial brief . . . was filed, this court was not aware that there was a continuing claim that [Bridjay] and her experts were denied discovery in the form of lack of access to the books and records . . . ." Bridjay has not raised the issue of inspecting the books and records in her appellate brief and, therefore, has abandoned that claim.

[11] Hereinafter, unless otherwise indicated, all references to §§ 34-207 and 34-208 in this opinion are to the 2017 revision of the statute.

[12] In the operative complaint, Bridjay stated the grounds for dissolution, winding up and distribution of assets as being found in §§ 34-207 and 34-208 (a) (2) and General Statutes §§ 33-896 (a) (1) (B) and (D), 34-267, and 34-372 (5).

In its decision, the court stated that "§ 34-372 (5) and . . . § 33-896 (a) (1) (B) and (D) are not applicable since the LLCs are not governed by the partnership statutes or corporate statutes after July 1, 2017. Only . . . § 34-267 is applicable for LLCs after July 1, 2017."

"Our common law does not recognize LLCs, which were first created by statute in Connecticut in 1993. . . . The provisions of the [Connecticut Limited Liability Company Act (CLLCA), General Statutes (Rev. to 2017) § 34-100 et seq.] relating to winding up an LLC's affairs inextricably link the winding up process to a dissolution, and therefore must be read together with the statutes governing the dissolution of an LLC." *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 317–18, 138 A.3d 257 (2016). "The [CLLCA] provides only a single mechanism for triggering a winding up of an LLC's affairs: an event of dissolution." Id., 318.

Sections 34-206 and 34-207 set forth multiple dissolution events. General Statutes (Rev. to 2017) § 34-206 provides: "A limited liability company is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following: (1) At the time or upon the occurrence of events specified in writing in the articles of organization or operating agreement; (2) unless otherwise provided in writing in the articles of organization or operating agreement, upon the affirmative vote, approval or consent of at least a majority in interest of the members; or (3) entry of a decree of judicial dissolution under section 34-207."

Pursuant to General Statutes (Rev. to 2017) § 34-207, "[o]n application by or for a member, the superior court for the judicial district where the principal office of the limited liability company is located may order dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement."

Section 34-208 describes the winding up of a limited liability company. It provides in relevant part: "(a) Except as otherwise provided in writing in the operating agreement, the business and affairs of the limited liability company may be wound up . . . (2) on application of any member or legal representative or assignee thereof, by the superior court for the judicial district where the principal office of the limited liability company is located, if one or more of the members or managers of the limited liability company have engaged in wrongful conduct, or upon other cause shown." General Statutes (Rev. to 2017) § 34-208.

As an additional basis for dissolution, Bridjay cited General Statutes § 34-267 (a), which provides in relevant part: "A limited liability company is dissolved, and its activities and affairs must be wound up, upon the occurrence of any of the following . . . (4) On application by a member, the entry by the Superior Court . . . of an order dissolving the company on

the grounds that: (A) The conduct of all or substantially all of the company's activities and affairs is unlawful; or (B) it is not reasonably practicable to carry on the company's activities and affairs; (5) On application by a member, the entry by the Superior Court . . . of an order dissolving the company on the grounds that the mangers or those members in control of the company: (A) Have acted, are acting or will act in a manner that is illegal or fraudulent; or (B) have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant . . . ." As explained later in this opinion, we conclude that this section is not applicable to Bridjay's claim.

[13] Although the court stated it would apply the post-July 1, 2017 dissolution and winding up statutes in its decision, the court does not use these statutes in its analysis.

[14] Bridjay has not challenged the trial court's factual findings or its conclusion that she failed to meet her burden of proof regarding her claims of oppression. Instead, she contends that "[n]either the parties nor the trial court had the benefit of this guidance [set forth in *Manere* v. *Collins*, supra, 200 Conn. App. 384–85] before the judgment was issued . . . ." Therefore, she argues that "the court's exercise of supervisory authority is necessary in order to restore the integrity of the outcome of the case . . . ."

[15] "[The] plaintiffs take the position that the legislature did not intend to apply [CULLCA] retroactively and that, despite being repealed, [General Statutes (Rev. to 2017) §§ 34-100 to 34-242] apply to any act which occurred prior to July 1, 2017; for any claim which occurred subsequent to July 1, 2017, the proper statutory application is [CULLCA]."

———————————————